UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NORMAND FOGARTY,

    Plaintiff,

v.

ROBERT CARTER, JR. *et al.*,

    Defendants.

CAUSE NO. 3:21-CV-200-DRL-MGG

OPINION AND ORDER

Normand Fogarty, who was a prisoner when he filed this action but has since been released from custody, was granted leave to proceed against Indiana Department of Correction (IDOC) Commissioner Robert Carter, Jr., for money damages for excluding him from a college program at Westville Correctional Facility because he is confined to a wheelchair in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*[1] (ECF 12.)

Mr. Fogarty now moves for summary judgment in his favor. (ECF 94.) Well over 28 days have passed since the motion was filed, and for unknown reasons, the Commissioner did not file a response. Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). "The ultimate burden of persuasion remains with the movant to

---

[1] He was also granted leave to proceed on a First Amendment claim against Dorothy Livers, but this order does not pertain to that claim. Additionally, the parties are still in discovery and the Commissioner has not yet filed a dispositive motion.

show that [he or she] is entitled to judgment as a matter of law." *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (citation and internal alteration omitted).

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as this is "the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (citation omitted)). Under the Act, damages are available against a state that accepts federal funds for prison operations. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). To prove a claim, a plaintiff must establish three elements: (1)

he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Proving the first element requires the plaintiff to show that he "meets the essential eligibility requirements" for participating in the program, with or without reasonable accommodations.[2] 42 U.S.C. § 12131(2). "[T]here is no right to have access to programs unless one is 'qualified' with or without reasonable accommodation." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560–61 (7th Cir. 1996). "Disability" includes the limitation of one or more major life activities, including walking, standing, and bending. 42 U.S.C. § 12102(2)(A). To establish causation, "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action." *Conners*, 984 F.3d at 1260.

Mr. Fogarty has several chronic medical conditions and is in a wheelchair.[3] Though he was in prison, he was housed in a medical dormitory and was classified as "medical idle," defined as "[a] long-term medical status in which the offender has been ordered by a medical doctor not to work or participate in other facility activities, programs, or assignments, except as ordered." (ECF 2-1 at 7.) Notwithstanding his "medical idle" status, he asked several times to be allowed to participate in a free college

---

[2] The court must look "to the standards applied under the Americans with Disabilities Act of 1990 . . . to determine whether a violation of the Rehab Act occurs[.]" *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002).

[3] As he describes his health issues: "I am 57 years old with history of failed back fusion, two strokes and blood clots now confined to [a] wheelchair. About 25 % verbal and great difficulty trying to write and communicate with others." (ECF 2 at 3.) Medical records he has submitted show he also suffered neck problems and digestive issues, among other ailments, while at Westville. (ECF 38-1 at 66-67.)

3

program through Holy Cross College. (ECF 38-1 at 6, 8, 10, 11.) He argues that he was denied the ability to participate solely because he is in a wheelchair. (ECF 94.)

The documentation he has submitted reflects that inmates cannot simply choose to participate in a particular program; rather, they must be referred to a program by their caseworker based on a variety of considerations. (ECF 38-1 at 5.) Mr. Fogarty acknowledges that when he first discussed his placement with his caseworker, he "let [her] talk me into a referral for bus[iness] tech." (ECF 38-1 at 30.) He later sought to switch to the college program, but his caseworker informed him that the business-tech placement was more appropriate because he was housed in a medical dormitory, which was necessary to "support your medical needs." (ECF 38-1 at 10, 15, 34.) It appears the college program was only available to inmates living in the "Honor" dormitory, which Mr. Fogarty was not. (*See* ECF 38-1 at 7.) He was told he could request a transfer 12 months after his arrival at the prison. (*Id.* at 10.) He complained to her superior and received the following response: "Offenders are referred to programs based on offender needs not offender wants. You are currently referred to business tech. After that program has been completed, your caseworker can review your case plan for future programing needs." (ECF 38-1 at 20.)

He then complained to IDOC officials about this and a variety of other matters related to whether the facility was wheelchair-accessible. (ECF 38-1 at 18-19.) He received a response from William Wilson, the Executive Director of Adult Operations, who stated that his assertions about lack of facilities and programming for inmates in wheelchairs

4

was "inaccurate," as the facility had been inspected and accredited by an outside agency. (ECF 38-1 at 24.) Mr. Wilson further stated: "The facility staff will make accommodations for you to participate in programming, which is determined by referral, to be beneficial to you." (*Id.*) Mr. Fogarty continued to complain within the facility about his exclusion from the college program, but there is no indication he completed the business-tech program.

Based on the record, Mr. Fogarty has not shown an entitlement to summary judgment. It is Mr. Fogarty's burden to prove that he was a "qualified" person within the meaning of that term, and that he was denied participation in the college program solely because he is in a wheelchair. He has not done so. There is evidence in the record that he was not approved for participation in the Holy Cross program because he was housed in a different dormitory due to his extensive medical needs, and further, that he agreed to participate in the business-tech program and did not complete it. Construing this evidence in favor of the Commissioner, as the court must, a reasonable jury could conclude that these were the reasons he was not referred to the college program, rather than intentional disability discrimination.

For these reason, the plaintiff's motion for summary judgment (ECF 94) is DENIED.

SO ORDERED.

September 22, 2022                                        *s/ Damon R. Leichty*
                                                          Judge, United States District Court