UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NORMAND FOGARTY,

    Plaintiff,

    v.      CAUSE NO. 3:21-CV-200-DRL

ROBERT CARTER JR. *et al.*,

    Defendants.

OPINION AND ORDER

Normand Fogarty, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding "against Commissioner Robert Carter, Jr., in his official capacity for money damages for excluding the plaintiff from a college program because he is confined to a wheelchair in violation of the Rehabilitation Act[.]" ECF 12 at 5. Second, he is proceeding "against Nurse Dorothy Livers in her individual capacity for money damages for terminating his medical idle pay because of grievances he filed about his medical care in violation of the First Amendment[.]" *Id.* Commissioner Carter and Nurse Livers filed separate motions for summary judgment. ECF 145, 148. Mr. Fogarty filed a response to Nurse Livers' summary judgment motion, and Nurse Livers filed a reply. ECF 152, 153, 154. Mr. Fogarty has not responded to Commissioner Carter's summary judgment motion, and the time for doing so has expired. Both summary judgment motions are ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

    A.    *Commissioner Carter.*

Mr. Fogarty is proceeding against Commissioner Carter for violating the Rehabilitation Act by excluding him from the Holy Cross college program because he is confined to a wheelchair. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (citation omitted). To prove a claim, a plaintiff must establish three elements: (1) he is a qualified person (2) with a disability and (3) the

2

defendant denied him access to a program, service, or activity because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). To prove causation, "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action." *Conners*, 984 F.3d at 1260.

Commissioner Carter provides an affidavit from John Hicks, the litigation liaison at Westville Correctional Facility (WCF). Holy Cross is a college program offered at WCF. ECF 145-1 at 1. "Business Tech" is a separate education program offered at WCF. *Id.* Pursuant to policy, an inmate may only participate in one educational program at a time. *Id.* Therefore, an inmate cannot be enrolled in both Business Tech and Holy Cross at the same time. *Id.* at 2.

Commissioner Carter also provides Mr. Fogarty's progress notes from the Offender Case Management System, which show that Mr. Fogarty arrived at WCF in April 2019. ECF 145-2 at 5. Upon his arrival, he met with his caseworker and expressed he would like to get into a college program or Business Tech. *Id.* The caseworker referred him to the Business Tech program. *Id.* Mr. Fogarty expressed concerns about whether he could participate in the Holy Cross program due to him being in a wheelchair, and the caseworker responded she would inquire and get back to him. *Id.* In June 2019, Mr. Fogarty submitted a pink slip expressing concerns of programming limitations due to him being in a wheelchair, and his caseworker responded that she had referred him to the Business Tech program and once that program had been completed his case plan would be reviewed for future programming needs. *Id.* at 4. Mr. Fogarty met with his caseworker in July 2019, and expressed he had taken his test for the Business Tech

3

program. *Id.* at 3. He did not pass the test on the first attempt, but had retaken the test and was confident he would pass. *Id.* In October 2019, Mr. Fogarty met with his caseworker and expressed he was currently in the Business Tech program but wanted to be removed from the program because he was in pain. *Id.* at 2. Mr. Fogarty was removed from the program and informed he could return when he was feeling better. *Id.* In January 2020, he requested transfer to a different facility. *Id.* at 1.

At his deposition, Mr. Fogarty testified that, when he first arrived at MCF, he told his caseworker he wanted to do the Holy Cross program. ECF 145-3 at 25-26. His caseworker responded that she would check if the Holy Cross program could be done in a wheelchair, and in the meantime signed him up for the Business Tech program. *Id.* at 26. Mr. Fogarty agreed to do the Business Tech program, but looking back he wished he had declined and instead waited for an answer about the Holy Cross program. *Id.* He tried to participate in the Business Tech program for several weeks but had to withdraw due to pain in his neck. *Id.* at 27-29. Mr. Fogarty acknowledged he could only do one program at a time, and stated he decided to do the Business Tech program because he never got an answer about the Holy Cross program. *Id.* at 30.

Here, Mr. Fogarty has not provided any evidence he was denied access to the Holy Cross program solely due to his disability. Rather, the evidence shows Mr. Fogarty inquired about joining the Holy Cross program, but agreed to enroll in the Business Tech program instead before he had received any response about the Holy Cross program. It is undisputed that, while he was enrolled in the Business Tech program, he was not eligible to be enrolled in the Holy Cross program at the same time. After Mr. Fogarty

4

withdrew from the Business Tech program, he requested a transfer to a new facility and there is no evidence he made any further attempts to join the Holy Cross program. Because the undisputed facts show Mr. Fogarty voluntarily agreed to participate in the Business Tech program while he was waiting for a response about the Holy Cross program, which rendered him ineligible for the Holy Cross program, no reasonable jury could conclude he was denied access to the Holy Cross program solely due to his disability. Summary judgment is thus warranted in favor of Commissioner Carter.

B.    *Nurse Livers.*

Mr. Fogarty is proceeding against Nurse Livers for terminating his medical idle pay in retaliation for grievances he filed about his medical care, in violation of the First Amendment. An allegation of First Amendment retaliation requires the plaintiff to show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotations and citations omitted). To demonstrate causation, Mr. Fogarty must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quotations omitted).

Nurse Livers tenders an affidavit. At the time of the events alleged in Mr. Fogarty's complaint, Nurse Livers was employed by Wexford of Indiana, LLC, as the Healthcare Services Administrator for WCF. ECF 150-1 at 2. Her job duties included administrative work, onboarding new staff, audits, payroll, grievances, ordering supplies, and working

5

with other department heads to ensure patient care was delivered. *Id.* Nurse Livers was employed by Wexford, not the Indiana Department of Correction (IDOC), so she did not have access to the IDOC's system where information regarding medical idle pay is maintained. *Id.* at 3. Medical idle pay is for inmates located in the infirmary who, due to medical reasons, cannot work or participate in programs. *Id.* at 4. Nurse Livers did not make any determinations regarding medical idle pay, as this responsibility remained with IDOC personnel. *Id.* Nurse Livers prepared a spreadsheet each month detailing which inmates were housed in the infirmary, but she did not make any determinations whether an inmate would receive medical idle pay. *Id.* at 4-5. As Health Services Administrator, she had no authority or ability revoke an inmate's medical idle pay. *Id.* at 5. Nurse Livers did not believe Mr. Fogarty was eligible for medical idle pay because he was never housed in the infirmary and was able to participate in educational programs and hold a work assignment, and she relayed that information to Mr. Fogarty on several occasions. *Id.* at 5-6. But Nurse Livers never revoked Mr. Fogarty's medical idle pay, and did not have the ability or access to do so. *Id.* at 6.

In his response, Mr. Fogarty argues he received medical idle pay from 2013 until April 2020, when Nurse Livers stopped his medical idle pay in retaliation for his filing of a grievance. ECF 152 at 1-3. Specifically, he asserts that, three or four days after he had words with Nurse Livers and showed her a grievance response he received, his medical idle pay was stopped. *Id.* at 3. He concludes the timing of these events show Nurse Livers put a stop to his medical idle pay. *Id.*

Here, Mr. Fogarty has not provided any evidence that Nurse Livers took any retaliatory action against him. Specifically, Nurse Livers attests she did not revoke Mr. Fogarty's medical idle pay, and did not have the ability or access to do so. Mr. Fogarty provides no evidence disputing that attestation aside from his own speculation that Nurse Livers was responsible for revoking his medical idle pay. *See Trade Fin. Partners, LLC*, 573 F.3d at 407 ("[I]nferences relying on mere speculation or conjecture will not suffice" to survive summary judgment); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"). Though the timing of the termination of Mr. Fogarty's medical idle pay can be circumstantial evidence of a retaliatory *motive*, Mr. Fogarty still must provide non-speculative evidence that Nurse Livers took a retaliatory action inspired by that motive. Because he does not do so, summary judgment is warranted in favor of Nurse Livers on this claim.

For these reasons, the court:

(1) GRANTS Commissioner Carter's motion for summary judgment (ECF 145);

(2) GRANTS Nurse Livers' motion for summary judgment (ECF 148); and

(3) DIRECTS the clerk to enter judgment in favor of Commissioner Carter and Nurse Livers and against Normand Fogarty and to close this case.

SO ORDERED.

October 6, 2023                                 *s/ Damon R. Leichty*
                                                Judge, United States District Court